**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THREE BROTHERS TRUCKING, Inc., | No. C 06-1816 WDB; and No. C 06-2583 WDB |
| Plaintiff | ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER ACTIONS TO THE NORTHERN DISTRICT OF TEXAS |
| v. | |
| EXEL GLOBAL LOGISTICS, INC., and Does 1-10 | |
| Defendant. | |
| _____/ | |
| and Related Case | |
| _____ | |

These are two related contract disputes between Plaintiff Three Brothers Trucking and Defendant Exel Global Logistics, Inc. — a company for which Plaintiff acted as an independent contractor to provide trucking-related services. Plaintiff originally filed the actions in San Mateo County Superior Court. Defendant removed both actions to this Court under 28 U.S.C. § 1441(b) on grounds of diversity of citizenship. Defendant then moved to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to transfer both actions to the Northern District of Texas pursuant to a forum selection clause that defendant contends is operative in contracts underlying both actions.

1

1    For the reasons set forth below, the Court GRANTS Defendant's Motion to
2  Transfer under 28 U.S.C. § 1406(a) and TRANSFERS **both** actions to the Northern
3  District of Texas.[1]

4  I    BACKGROUND

5    There are three companies at issue here:  Exel Global Logistics ("Exel
6  Global"), Exel NAL, and Plaintiff (Three Bros. Trucking).  Exel NAL was at one time
7  a subsidiary of Exel Global, but now has been merged into Exel Global.

8    There also are three contracts at issue.  First, there is a March 2002
9  Independent Contractor Agreement between Plaintiff and Exel NAL for
10 transportation services ("NAL ICA").  This agreement includes a Texas forum
11 selection clause.  Plaintiff grounds its entire complaint in Case No. 06-2583 on a
12 breach of this contract (see Complaint at 3 and Ex. A), and also explicitly alleges a
13 breach of this same contract in Case No. 06-1816 (see Complaint at paragraph 14).
14  Second, there is a November 2002 Cartage Agreement between Exel Global  and
15 Exel NAL ("Cartage Agreement") for pickup and delivery services to the San
16 Francisco Airport.  Plaintiff is *not* a party to this contract, but claims it is a third party
17 beneficiary.  Plaintiff purports to ground, in part, its Complaint in Case No. 06-1816
18 on this Cartage Agreement.  This agreement is the only contract of the three that does
19 *not* have a forum selection clause.  Third, there is a September 2004 Independent
20 Contractor Agreement between Plaintiff and Exel Global for transportation services
21 ("Exel Global ICA").  At the hearing on Defendant's Motion, Plaintiff claimed that
22 the terms of the Cartage Agreement were needed to fill in the Exel Global ICA and,
23 thus, that actually it was under the Exel ICA that Plaintiff's breach of contract claims
24 arise in Case No.  06-1816.

25

26

27   [1]   Defendant asserted 28 U.S.C. § 1404 as an alternative means to transfer the action to
28 Texas.  The Court DENIES Defendant's motion on this ground.

The forum selection clauses contained in the NAL ICA and Exel Global ICA are identical and provide that all litigation between the parties must be brought in Texas. The contracts also contain identical merger clauses, which provide that the agreements constitute the sole and entire agreements between the parties and supercede all prior agreements, undertakings, and practices, oral or written, between the parties.

Defendant brought this Motion to dismiss under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406 for improper venue to enforce the forum selection clauses in the ICA's. Defendant contends that, on their face, the clauses require that Plaintiff's actions be dismissed for improper venue or, in the alternative, transferred to the Texas courts. Plaintiff opposes the motion, asserting for Case No. 06-1816, that the contract under which it is suing (the Cartage Agreement) does not have a forum selection clause and, in any event, that the clauses at issue in both actions are a result of "overweening bargaining power," most of the witnesses are located in California, and that it would be a "practical impossibility" financially for Plaintiff to bring these cases in Texas. *See* Opposition at 15-17; Declaration of Jaime Esguerra In Support of Opposition to Motion to Dismiss and/or Motion to Transfer Venue.

II     LEGAL STANDARD

A court deciding a Rule 12(b)(3) motion must draw all reasonable inferences and resolve all factual disputes in favor of the non-moving party or, in the alternative, may hold an evidentiary hearing. *See Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1137-39 (9th Cir. 2004). The pleadings need not be accepted as true, however. *Id.* at 1137.

3

1   III     THE FORUM SELECTION CLAUSES AT ISSUE

2          The first issue the Court must resolve in Defendant's Motion is whether the

3   contracts under which Plaintiff are suing contain forum selection clauses. This

4   question is answered easily with respect to Case No. 06-2583, in which Plaintiff

5   alleges only a breach of the NAL ICA, an agreement that indisputably contains the

6   Texas forum selection clause.

7          The issue is more complicated with respect to Case No. 06-

8   1816, where Plaintiff alleges a breach of the Cartage Agreement, which does <u>not</u>

9   contain a forum selection clause.  Plaintiff is not a party to this agreement, but claims

10  to have rights as a third party beneficiary.   Notably, however, at the hearing on the

11  matter, Plaintiff conceded that what it actually was arguing was that the terms of the

12  Cartage Agreement were needed to fill in the Exel ICA ( to which Plaintiff *is* a party),

13  which contained few substantive terms.[2]  This concession  thus brings Plaintiff within

14  the four corners of the Exel ICA and makes a  breach of that contract squarely at issue

15  in Case No. 06-1816.

16         To be clear, the Court does <u>not</u> find that the Cartage Agreement's terms have,

17  indeed, become part of the Exel ICA — only that, once Plaintiff contended as much,

18  Plaintiff indisputably falls within the ICA and becomes subject to the forum selection

19  clause in that agreement.   Accordingly, Plaintiff's breach of contract claims in both

20  Case Nos. 06-1816 <u>and</u> 06-2583 arise from contracts containing the identical Texas

21   forum selection clause.

22  IV     ENFORCEMENT OF FORUM SELECTION CLAUSE IN THE ICA'S

23         Next, having determined that both of Plaintiff's breach of contract actions

24  involve contracts containing the identical forum selection clause, the Court must decide

25  whether the clause is enforceable.

26

27         [2]  Given Plaintiff's concession, it is not necessary for the Court to consider Plaintiff's

28  claim that it is a third party beneficiary to the Cartage Agreement.

1    A forum selection clause is prima facie valid and enforceable unless the non-

2  moving party can show that enforcement would be "'unreasonable' under the

3  circumstances." *Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10 (1972); *see also R.A.*

4  *Argueta v. Banco Mexicano*, 87 F.3d 230, 324 (9th Cir. 1996) ("Although *Bremen* is

5  an admiralty case, its standard has been widely applied to forum selection clauses in

6  general.").   The burden is on the non-moving party to show that the clause should not

7  be enforced.   *See Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 515 (9th Cir.

8  1988), *quoting Bremen*, 407 U.S. at 18.

9    In particular, there are "three reasons that would make enforcement of a

10  forum selection clause unreasonable:  1) if the inclusion of the clause in the agreement

11  was the product of fraud or overreaching; 2) if the party wishing to repudiate the

12  clause would effectively be deprived of his day in court were the clause enforced; and

13  3) if enforcement would contravene a strong public policy of the forum in which suit

14  is brought." *Murphy*, 362 F.3d at 1140 (internal quotations omitted); *see also Bremen*,

15  407 U.S. at 12-13.

16    Here, Plaintiff argues that the forum selection clause at issue in the ICA's is

17  unreasonable for two primary reasons: (1) that the clause is one-sided and a result of

18  overweening bargaining power; and (2) that it is a "practical impossibility" from a

19  financial standpoint for Plaintiff to bring its claims in Texas.   Neither argument is

20  persuasive.

21    First, though Exel Global is, indeed, the larger company of the two and had

22  greater bargaining power, this fact alone does not invalidate a forum selection clause.

23  *See e.g.,  Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594 (1991) (enforcing a

24  forum selection clause against a cruise passenger, even though the relevant contract

25  language was buried in the fine print of an adhesion contract).  In *Shute*, the Supreme

26  Court focused its fairness analysis on determining whether the cruise line obtained

27  plaintiffs' consent through fraud or overreaching or exhibited any bad-faith motives

28

5

1    such as discouraging passengers from pursuing legitimate claims. *Id.* at 595.  Plaintiff

2    here does not contend that it was induced to enter the contract through fraud or any

3    other illegal means.  Instead, Plaintiff claims to have entered the contract because

4    "[he] very much needed the contract to keep all his trucks busy." *See* Declaration of

5    Jaime Esguerra at 11.  This is a reality of contracting, however, and is not a sufficient

6    legal  reason to invalidate the forum selection clause.  *See Murphy*, 362 F.3d at 1141

7    ("Under *Carnival Cruise*, a differential in power or education on a non-negotiated

8    contract will not vitiate a forum selection clause.").

9         Plaintiff's second argument is equally unavailing.  Even if we resolve all

10   inferences in favor of Plaintiff and credit its statement that it will be financially

11   "impractical" for it to litigate in Texas, this is not enough for Plaintiff to meet its

12   *heavy burden* that it "would effectively be deprived of [its] day in court were the

13   clause enforced." *Murphy*, 362 F.3d at 1140.

14        To support its claim that it would be "impractical" to litigate in Texas,

15   Plaintiff submitted the Declaration of its President, Jaime Esguerra.  Mr. Esguerra

16   stated that the witnesses for the action are all in San Francisco, that it will cost an

17   additional $10,000 to depose them on videotape  for use at trial in Texas, and that the

18   company will be forced to duplicate costs by hiring Texas counsel.  *See* Decl. of Jaime

19   Esguerra at 9 and 10.  The declaration also  states that Plaintiff's business is down

20   from eleven trucks to one truck, and that when the company entered the contract with

21   Defendants its annual revenues exceeded $843,000. The declaration does *not* provide

22   any detailed information, however, about the company's current annual  revenues or

23   profits or any other meaningful financial data.

24        While financial ability *is* one basis upon which a party can allege a burden

25   to show that a forum selection clause is unenforceable (*see Murphy*, 362 F.3d at 1141-

26   42), cases where courts have found the burden met involved a much greater hardship

27   than Plaintiff claims here and did not involve  only a financial hardship.  For example,

28

6

1    in *Murphy*, the plaintiff was an individual (not a corporation) suing on a personal

2    injury claim.  He claimed he could not travel to Wisconsin (the state selected by the

3    forum clause) due to his injury, was living on his disability payments, and had no

4    disposable income at all.  *Murphy*, 362 F.3d at 1142.  Similarly, in *Walker v. Carnival*

5    *Cruise Lines*, 107 F.Supp.2d 1135 (N.D. Cal. 2000), plaintiffs were seriously disabled

6    cruise passengers whose multiple sclerosis prevented them from traveling to the forum

7    state.  Judge Henderson concluded that, in such a case, enforcing the forum selection

8    clause would effectively deny them access to the courts.  *Id.*

9         Here, by contrast, while Plaintiff will be forced to spend more money to litigate

10   its claims in Texas ($10,000 and the cost to bring Texas counsel up to speed), these

11   sums are not so great as to deprive Plaintiff of its day in court — especially in light of

12   Plaintiff's claim for damages in excess of $400,000 in Case No. 06-1816.  Nor is there

13   any other reason — such as inability to travel or any other claimed difficulty — that

14   Plaintiff cannot bring its action in Texas, as it agreed to do when it signed the ICA's.

15        *The Bremen* itself notes that it is "incumbent on the party seeking to escape his

16   contract  to show that the trial in the contractual forum will be so **gravely difficult**

17   **and inconvenient** that he will for all practical purposes be deprived of his day in

18   court."   407 U.S. at 18 (emphasis added).   This language has been interpreted

19   narrowly by subsequent courts.  For example, in *Servewell Plumbing v. Federal*

20   *Insurance Co.*, 439 F.3d 786, 790 (8th Cir. 2006), a very recent case by the Eighth

21   Circuit, the court enforced a forum selection clause on plaintiff's action for

22   $123,342, noting that "[t]he 'great expense' Servewell claims it will incur if

23   forced to secure witnesses located in Arkansas for litigation in Florida, falls well short

24   of depriving it of its day in court."

25        In another recent case, *Pratt v. Silversea Cruises Ltd.*, 2005 WL 1656891, *3

26   (N.D. Cal. 2005) (unpublished), Judge Illston noted that *"Murphy* [in the 9th Cir.] and

27   the weight of persuasive authority from this district and other jurisdictions  suggest

28

1   that neither severe physical limitation nor economic hardship alone is generally

2   enough."   In addition, "conclusory assertions" and "unsupported statements" such as

3   the ones made by Plaintiff about its financial condition "do not meet the 'heavy burden

4   of proof' required to set aside a forum selection clause on the ground of

5   inconvenience." *Talatala v. Nippon Yusen Kaisha Corporation*, 974 F. Supp. 1321,

6   1326 (D. Haw.) (J. Ezra) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585

7   (1991)).

8        Some courts also have analyzed claims of financial hardship on the basis

9   of whether the costs and inconvenience were "foreseeable at the time of contracting."

10   *See e.g., Seecomm Network Services v. Colt Telecommunications*, 2004 WL 1960174

11   (N.D. Cal.) (M.J. James) (unpublished decision).

12        Here, Plaintiff is not claiming it was unaware of the forum selection clause at

13   the time it signed the agreement  — costs of travel to litigate in Texas therefore

14   certainly were foreseeable.   Likewise, though Plaintiff would like to have its

15   depositions videotaped, that is not an absolute necessity.  Another option would be to

16   read deposition transcripts to a Texas jury.  Finally, though Plaintiff points to the

17   additional costs that would be incurred in Texas, it does not mention the costs it would

18   save by not bringing live witnesses to the trial — e.g., witness fees — were it to

19   proceed in California.

20        In sum, while Plaintiff has alleged that it is not in as solid a financial

21   condition as it was when it first entered the ICA's with Exel, any such downturn in

22   business, standing alone, falls far short of showing that a decision to honor the forum

23   selection clauses would deny Plaintiff access to the courts.

24   V    CONCLUSION

25        Having failed to meet its heavy burden to prove that the forum selection clauses

26   contained in the ICA's are unreasonable and unenforceable, Plaintiff is subject to the

27   clauses in both   contract actions.  Accordingly, the court GRANTS Defendant's

28

1   Motion and, "in the interest of justice" pursuant to 28 U.S.C. § 1406(a), TRANSFERS

2   Case Nos. 06-1816 WDB <u>and</u> 06-2583 WDB to the Northern District of Texas**.**

3

4   IT IS SO ORDERED.

5   Dated:   May  16, 2006                          */s/ Wayne D. Brazil*

6                                                               WAYNE D. BRAZIL
                                                                  United States Magistrate Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9